UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN ARCE,

Plaintiff,

v.

FCA US LLC,

Defendant.

Case No. 19-cv-10815

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#27]

### I. INTRODUCTION

On March 19, 2019, Plaintiff Robin Arce ("Plaintiff") filed the instant hostile work environment sexual harassment, sex discrimination, and retaliation claims, pursuant to Title VII of the Civil Rights Act and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), against Defendant FCA US LLC ("Defendant"). ECF No. 1. Plaintiff alleges that Defendant punished her for reporting sexual harassment, which she was purportedly subjected to for years, and treated her less favorably than her male co-workers. *See generally id.*

Presently before the Court is Defendant's Motion for Summary Judgment, which was filed on May 29, 2020. ECF No. 27. Plaintiff filed a Response on June 19, 2020. ECF No. 28. Defendant filed its Reply on July 6, 2020. ECF No. 30. A

hearing on this matter was held on October 26, 2020.  For the reasons that follow, the Court will **DENY** Defendant's Motion for Summary Judgment [#27].

## II. BACKGROUND

Plaintiff's claims stem from the allegedly hostile work environment she experienced while working on the "Blocks Line" at Defendant's South Plant in Trenton, Michigan.[1]  From the outset of her employment, Plaintiff avers that she has tolerated sex-based comments from her male co-workers.  ECF No. 28, PageID.425. In February 2017, she explains that the hostility escalated to a level which she could "no longer tolerate" when she heard that a co-worker, Mr. Paul Southworth, spread "sexually explicit rumors about her; specifically that she "made vulgar comments implicating her own talent at performing oral sex."  *Id.*  Plaintiff reported Mr. Southworth's conduct to union officials and Defendant's Human Resources department.  *Id.* at PageID.425.  After an investigation, both Plaintiff and Mr. Southworth had their initial suspensions converted into thirty-day disciplinary layoffs ("DLOs").  *Id.* at PageID.431; ECF No. 27, PageID.250.

### A. Plaintiff's Employment

Plaintiff began working as a production worker at Defendant's Trenton Engine Complex in 1993.  ECF No. 28, PageID.426.  At the time of the alleged

---

[1] Plaintiff currently works at Defendant's North Plant at the Trenton Engine facility. ECF No. 27, PageID.247.

conduct here, Plaintiff worked on the "Blocks Line" in Defendant's South Plant. ECF No. 27, PageID.247. She is represented by the United Auto Workers union ("UAW") and her employment is subject to a collective bargaining agreement. *Id.*

Plaintiff identifies as a "dedicated, exemplary employee" who is "proud to be one of the few women with a successful career" at Defendant's plant. ECF No. 28, PageID.427. She avers that she has endured years of sexual comments, innuendoes, and physical violations. *Id.* at PageID.426. Defendant asserts that these incidents either went unreported or were investigated and remedied, ECF No. 27, PageID.252.

### B. Mr. Southworth's Alleged Conduct and Plaintiff's Complaint

On February 27 or 28, 2017, Plaintiff was informed that Mr. Southworth was allegedly spreading sexually explicit rumors about her. ECF No. 28, PageID.427. Specifically, Mr. Southworth purportedly told other employees that Plaintiff "could really suck dick" and that she could "suck all their dicks and make them cum in 5 minutes." ECF No. 27, PageID.247–48. The parties dispute whether Plaintiff made such comments. *Id.* Plaintiff learned that Mr. Southworth was spreading such rumors "for months." ECF No. 28, PageID.428. These rumors also allegedly reached Plaintiff's husband, who works at Defendant's plant as well. *Id.*

Plaintiff initially sought help from UAW. *Id.* On or about March 2, 2017, the UAW organized a meeting between Plaintiff and Mr. Southworth. ECF No. 27, PageID.248. At this meeting, Mr. Southworth purportedly admitted making the

alleged comments and provided an apology to Plaintiff.  *Id.*  Defendant was not aware of Mr. Southworth's alleged conduct nor of this meeting.  *Id.*

Plaintiff thereafter heard from another co-worker that Mr. Southworth made similar sexually explicit comments about two to three months earlier.  *Id.*  Plaintiff then complained to her local union president Mr. Gabe Solano, who instructed Plaintiff to provide a written complaint.  ECF No. 28, PageID.428.  Mr. Solano then forwarded this complaint to Defendant's Human Resources Manager, Mr. Ed. Novacco.  *Id.*  Mr. Novacco sent Plaintiff's complaint to Mr. Nick Weber, who was a Labor Relations Supervisor at the time.  *Id.*  Mr. Weber then became responsible for investigating Mr. Southworth's alleged conduct.  ECF No. 27, PageID.249.

### C. Defendant's Investigation

Defendant's "Discrimination and Harassment Prevention Policy" (hereinafter, "Policy 3-6"), prohibits discrimination and harassment on the basis of specific protected classifications, including sex.  ECF No. 27, PageID.247.  Policy 3-6 defines sexual harassment as "unwelcome physical or verbal conduct that is either of a sexual nature, or directed to a person because of that person's sex, when … such conduct creates an intimidating, hostile, or offensive work environment." ECF No. 28-5, PageID.504.  All employees are provided several options by which to submit a complaint of sexual harassment.  *Id.*  Defendant investigates "all discrimination and harassment complaints in a timely and impartial manner."  *Id.*

Moreover, Policy 3-6 strictly prohibits retaliation against any individual "who in good faith reports, or participates in the investigation of a discrimination or harassment allegation." *Id.*

Defendant's investigation process requires Human Resources to form an "Investigation Team," which includes at least one union representative, an attempt to include men and women, and an attempt to obtain signed statements from all parties. ECF No. 28-6, PageID.508. In cases where disciplinary actions result, copies of all documentation and notes relied on as the basis for such action are provided to the union. *Id.* at PageID.508–09.

Between March 10 and 17, 2017, Mr. Weber interviewed Plaintiff and Mr. Southworth, as well as ten other employees. ECF No. 27, PageID.249. Mr. Weber suspended Plaintiff and Mr. Southworth after several witnesses allegedly informed him that they both were attempting to influence other witnesses in the plant. *Id.* The parties dispute the adequacy of Mr. Weber's investigation. ECF No. 28, PageID.430.

After completing his investigation, Mr. Weber concluded that both Plaintiff and Mr. Southworth violated Defendant's Policy 3-6. *Id.* at PageID.431. He determined that Plaintiff "made the same sexually explicit comments she was claiming were offensive and sexual harassment." ECF No. 27, PageID.250. Accordingly, Mr. Weber issued both employees 30-day DLOs. *Id.*

### D. Plaintiff's and Mr. Southworth's Post-Suspension Employment

Mr. Southworth waived his grievance rights and was reinstated on April 5, 2017. ECF No. 27, PageID.250. Plaintiff avers that Defendant did not contact her about plans to return to work until "several days later." ECF No. 28, PageID.432. Mr. Southworth allegedly stayed in South Maintenance but was moved off the "Cranks Line" to the adjacent "Blocks Line." ECF No. 27, PageID.250.

Plaintiff chose to serve her full 30-day suspension and sought to return to her prior position in Department 922. *Id.* at PageID.432. She claims that she learned of Mr. Southworth's reinstatement on April 8, 2017. *Id.* Moreover, Plaintiff alleges that Mr. Solano informed her on April 11, 2017 that he had the "framework" to return her to Department 922. *Id.* On April 13, Mr. Solano and Mr. Novacco informed Plaintiff over the phone that she would return to that department. *Id.* However, Mr. Weber allegedly texted Plaintiff the night before she was scheduled to return to work, instructing her to report to Department 9190. *Id.* Defendant maintains that Plaintiff was initially offered re-assignment to the Ferrari Blocks Line in the North Plant; however, Plaintiff refused this assignment. ECF No. 27, PageID.250. Further, Defendant claims that Plaintiff was then instructed to report to Material Holding, but she took a two-day FMLA leave and never reported to this assignment. *Id.* at PageID.251.

Plaintiff was then allegedly assigned to Cylinder Heads Machining in the South Plant.  *Id.*  When she reported for work on April 20, 2017, Plaintiff was assigned to "C" crew.  *Id.*  Before requesting any changes to her new schedule, Plaintiff broke her wrist and spent the next three months on disability leave.  ECF No. 28, PageID.433.  While on her leave, Plaintiff initiated a transfer request to move to the North Plant to work on the "Blocks Line."  ECF No. 27, PageID.251.  Plaintiff continues to work in the "Blocks Line" on the same crew schedule as her husband. *Id.*  She reports working in "Department 922 on a regular basis – approximately four times per week."  ECF No. 28, PageID.434.  She has not reported any further complaints of any allegedly sexual harassment.  ECF No. 27, PageID.251.

### E. Defendant's Present Motion for Summary Judgment

Defendant now moves the Court for summary judgment in its favor on all of Plaintiff's claims.  ECF No. 27, PageID.236.  Defendant argues that Plaintiff cannot establish a prima facie claim under either Title VII or the ELCRA nor can she rebut Defendant's "legitimate, non-discriminatory business reasons for any adverse employment action."  *Id.* at PageID.237.  Moreover, Defendant asserts that summary judgment is appropriate because it took "prompt, remedial, non-discriminatory, non-retaliatory action that effectively stopped the alleged harassment."  *Id.* at PageID.246

Plaintiff opposed Defendant's Motion on June 19, 2020, arguing that she can establish a prima facie case for each of her claims.  ECF No. 28, PageID.426.  She

asserts that the evidence, when viewed in the light most favorable to her, "permits a reasonable factfinder to conclude that [Defendant] both punished [her] for reporting sexual harassment and treated her less favorably than male workers." *Id.*

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. ANALYSIS

Defendant argues that summary judgment is appropriate for Plaintiff's hostile work environment sexual harassment, sex discrimination, and retaliation claims. The Court shall address each claim in turn.

## A. Hostile Work Environment Sexual Harassment Claims (Counts II and V)

Plaintiff brings claims of hostile work environment sexual harassment under both Title VII and the ELCRA (Counts II and V, respectively).  Plaintiff alleges that Defendant subjected her to adverse employment actions, including but not limited to suspension and moving her to a less desirable position, due to her sex.  ECF No. 1, PageID.8, 13.  She argues a reasonable factfinder could conclude she endured a hostile work environment and that Defendant failed to take prompted and adequate remedial action.  *See* ECF No. 28, PageID.440.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...."  42 U.S.C. § 2000e–2(a)(1).  "A hostile work environment occurs 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 463 (6th Cir. 2000) (citation omitted).  Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in cases brought pursuant to Title VII.  *Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 468 (6th Cir. 2012).

To succeed on a hostile work environment claim based on sexual harassment, a plaintiff must demonstrate that: (1) she is a member of a protected class, (2) she

was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment created a hostile work environment, and (5) there is a basis for holding the employer liable. *Randolph v. Ohio Dep't of Youth Services,* 453 F.3d 724, 733 (6th Cir. 2006). Defendant only challenges the fourth and fifth elements of a hostile work environment claim in its present Motion.

### 1. Whether the Harassment Created a Hostile Work Environment

The fourth element of a hostile work environment claim relates to whether the alleged harassment created a hostile work environment. To satisfy this element, a plaintiff must establish that her work environment was subjectively and objectively hostile. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (citation omitted). "[T]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.*

Courts must consider the totality of circumstances when assessing the hostility of a plaintiff's work environment. *Smith*, 813 F.3d at 309; *see also Williams . Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). Factors for the court to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 512 (6th Cir. 2011). A court's determination of whether the

alleged harassment is sufficiently severe or pervasive for this element "is not susceptible to a mathematically precise test." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (internal quotation marks and citation omitted).

Here, Defendant argues that Plaintiff cannot establish the fourth element for two reasons.   First, Defendant asserts that Plaintiff's allegations of "isolated, historical incidents are insufficient to bolster [her] hostile environment claim." ECF No. 27, PageID.257–58.   Defendant emphasizes that these alleged comments or events not only occurred "sporadically over her 25 years" of work, but also fail to implicate Mr. Southworth specifically.   *Id.* at PageID.256.   Second, Defendant argues that Mr. Southworth's comments were neither severe nor pervasive.   *Id.* at PageID.258.   For the reasons that follow, the Court finds both arguments unavailing.

Plaintiff avers that she has tolerated sex-based comments, innuendos, and physical violations from her male co-workers for years.   ECF No. 28, PageID.426. She cites to various incidents between her and several of her co-workers during her employment with Defendant.   Plaintiff argues that the Court "must consider the context" of her work environment leading up to Mr. Southworth's alleged conduct in 2017.   *Id.* at PageID.437.

The Sixth Circuit has held that the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), requires a court to determine whether alleged incidents of harassment "occurring outside the statutory period are

*sufficiently related* to those incidents occurring within the statutory period as to form one continuous hostile work environment." *Wheaton v. N. Oakland Med. Ctr.*, 130 F. App'x 773, 787 (6th Cir. 2005) (emphasis in original).  Additionally, this Circuit's caselaw makes clear that courts "may consider evidence of other acts of harassment of which a plaintiff becomes aware during the period his or her employment, even if the other acts were directed at others and occurred outside of the plaintiff's presence." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 335 (6th Cir. 2008). While other acts of harassment will not necessarily establish a hostile work environment, nor should a court be required to give significant weight to other acts that are unrelated to a plaintiff's allegation, a court should engage in "fact-specific inquiry" to "determine the relevancy of past acts on a case-by-case basis." *Id.* at 336.  Generally, a court's weight to a prior act should be directly proportional to the act's proximity in time to the harassment at issue in a plaintiff's instant case. *Id.* at 337.  This Court will accordingly evaluate the various incidents cited by Plaintiff in accordance with this balancing approach.

First, Plaintiff testified that a plant doctor, Dr. Firnschild, insisted she "completely" take off her shirt in order for him to perform an examination in April 1993.[2]  ECF No. 27-2, PageID.283.  She explained that this experience made her

---

[2] The Court denotes that Plaintiff did not specifically mention this incident in her Response to Defendant's present Motion.  However, she did testify to this incident during her deposition.  *See* ECF No. 27-2, PageID.283.

uncomfortable and that she eventually complained of Dr. Firnschild's alleged conduct in July 1994. *Id.* at PageID.283.   As a result of this complaint, Defendant mandated that a nurse be present for Plaintiff's future medical examinations.  *Id.* Given that this incident is remote in time, it adds only limited weight to Plaintiff's instant claim.  Moreover, the Court emphasizes that Defendant acted on Plaintiff's complaint in July 1994 and provided a remedy for Plaintiff in the future.  Further, the Court takes notice that Dr. Firnschild, who is not subject to Plaintiff's instant suit, no longer works at the Plant.  *Id.* at PageID.284.

Second, Plaintiff avers that an unspecified time, a co-worker told Plaintiff that a woman's skin color "doesn't matter because it's all pink in the middle." *Id.*  She testified that she presented this incident to her boss at the time, Mr. Andy Dobbs.  *Id.* Because this incident occurred at an unknown time, it adds only limited weight to Plaintiff's instant claim.  Moreover, the Court emphasizes that Plaintiff's boss acted on this conduct.  Further, the Court highlights that Stanley, who is not subject to Plaintiff's suit, has not said anything of a sexual nature to Plaintiff since this incident.

Third, Plaintiff testified that another co-worker, Mr. Roy Dozier, ran his finger up her leg while she was drinking from a water fountain in 1993 or 1994.  *Id.* at PageID.284–85.  She claims that she complained to Mr. Tim Boyer, who was not her supervisor, but she never reported Mr. Dozier's conduct to anyone in labor relations, her union, or to a supervisor.  *Id.* at PageID.285.  Given that this incident

is remote in time, it adds only limited weight to Plaintiff's instant claim. Additionally, the Court takes notice that Mr. Dozier, who is not subject to Plaintiff's suit, has not touched her in an inappropriate way since this incident.

Fourth, Plaintiff alleges that in July 1996 a co-worker, Mr. Dave Kelly, made a statement to her that women who dress in a certain way deserve to be sexually assaulted. *Id.* at PageID.285. She also avers that Mr. Kelly followed her home. *Id.* at PageID.286. Plaintiff testified that provided a complaint to labor relations on Mr. Kelly's alleged conduct. *Id.* at PageID.286. Because this incident is remote in time, it adds only limited weight to Plaintiff's instant claim. Moreover, Plaintiff testified that she never experienced any further trouble with Mr. Kelly. *Id.* at PageID.288 (explaining that she moved to a different team shortly after the incident and mentioning she was not aware if Mr. Kelly still works at the plant).

Fifth, Plaintiff claims that in 1998 another co-worker, Mr. Pritcher, made a public comment about her need to pump breast milk. *Id.* Relatedly, another unknown co-worker allegedly left a "Got Milk?" ad, along with cookies, at Plaintiff's workstation following Mr. Pritcher's purported comments. *Id.* at PageID.289. While Plaintiff testified that she informed Human Resources about Mr. Pritcher's conduct, she explained that she did not report the subsequent and related conduct regarding the ad and cookies. *Id.* Given that these two incidents are remote in time, they add only limited weight to Plaintiff's instant claim.

-14-

Sixth, Plaintiff testified that she overheard another a co-worker, Mr. Jody Raines, bragging that "women call [him] the magician because [he has] a magic wand." *Id.* at PageID.292. The Court takes notice that Plaintiff did not report this incident. Because the Court cannot determine whether the alleged conduct was remote in time, it adds limited weight to Plaintiff's instant claim.

In sum, these incidents, which all predate Mr. Southworth's alleged conduct by several years, do not bear a strong relationship to Plaintiff's current working environment. Accordingly, the Court will decline to afford great weight to these six purported incidents involving vulgar workplace language and conduct.

Conversely, the Court finds one incident, while not overwhelming, sufficiently probative to support Plaintiff's claim that there is a genuine question of material fact as to whether her workplace was hostile. Specifically, Plaintiff testified that in 2016 or 2017 a co-worker, Mr. Louis Elmore, grabbed his genitals and said, "Tell Mark [Cannon] to suck my dick." *Id.* at PageID.291. According to Plaintiff, Mr. Elmore "frequently displayed such behavior" in front of her. *Id.* The Court denotes that Plaintiff did not report this conduct. However, the Court finds that this incident is related to form a continuing pattern of harassment based on Plaintiff's sex. Moreover, the subject-matter of the alleged harassment is sufficiently related to Mr. Southworth's purported conduct concerning sexually explicit rumors. Finally, this incident allegedly occurred around the same time Mr. Southworth

engaged in the purported harassment at issue in the present case.  In sum, the Court will afford greater weight to this incident in evaluating Plaintiff's hostile work environment claim.

The Court now shifts to Defendant's second argument: that Mr. Southworth's comments were neither severe nor pervasive.  ECF No. 27, PageID.258.  The Court will analyze this conduct with the aforementioned context in mind.

When establishing an objectively hostile or abusive environment, mere "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are insufficient.  *Faragher v. City of Boca Raton,* 524, U.S. 775, 788 (1998) (quotation marks omitted).  However, individual instances of sexual harassment that do not create a hostile environment on their own may have the aggregate effect of a Title VII violation.  *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999).  Aggregate conduct must be "extreme to amount to a change in the terms and conditions of employment."  *Faragher,* 524 U.S. at 788. The requisite level of "extreme" is not any higher when the alleged harassment occurred in a traditionally or stereotypically sexist environment.  *See Williams,* 187 F.3d at 564 ("[A] woman who chooses to work in the male-dominated trades [does not] relinquish[ ] her right to be free from sexual harassment .... Surely women working in the trades do not deserve less protection from the law than women working in[, for example,] a courthouse.").

Here, Defendant emphasizes that Mr. Southworth's comments were only made "on a couple occasions over a few months." *Id.* Defendant cites to *Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir. 2000), for the proposition that other courts have declined to find a hostile work environment in situations involving "far more serious conduct over a similarly short period of time."[3] *Id.* In *Burnett*, the Sixth Circuit determined that three allegations occurring over the course of a six-month period were not pervasive to survive summary judgment. 203 F.3d at 984. The court emphasized that the plaintiff failed to allege that the conduct at issue was "commonplace, ongoing, or continuing." *Id.* Moreover, the court denoted that the conduct did not contain an element of physical invasion. *Id.* (citation omitted). This Court declines to read *Burnett* so narrowly as to require an instance of physical invasion and thus conclude that any conduct without this element is far less serious.

Plaintiff alleges that Mr. Southworth spread rumors, including that she "could really suck dick" and that she was "good at blow jobs" to "multiple people" and on "multiple occasions." ECF No. 28, PageID.438; *see also* ECF No. 1, PageID.4. According to Plaintiff, these rumors "spread around the Trenton Engine Complex *continuously for months* before [she] even found out about them, and Mr.

---

[3] Defendant also cites to a case from the Eighth Circuit, *Wilkie v. Dept. of Health & Human Services*, 638 F.3d 944 (8th Cir. 2011), for the proposition that "spreading rumors about a plaintiff's sexual activity does not automatically create a hostile work environment. ECF No. 27, PageID.259. This Court is not bound by the law of a sister circuit and declines to follow the cited case here.

Southworth and others continued to discuss the rumors even after [she] reported them[.]" ECF No. 28, PageID.438–39 (emphasis added). In short, Plaintiff argues that the conduct was "ongoing." *Id.* at PageID.439. The Court also takes notice of Plaintiff's testimony that she "would literally be up [talking to the union] every day" if she had to make a complaint every time her male co-workers said "gross stuff." *See* ECF No. 28-2, PageID.470. Importantly, the Court has denoted that "multiple incidents of both general anti-female comments and sexually charged comments specifically directed at an employee raise a question of fact as to a hostile work environment." *Schmidlin v. Uncle Ed's Oil Shoppes, Inc.*, No 13-cv-10552, 2014 WL 3809415, at *9 (E.D. Mich. Aug. 1, 2014) (citation omitted). In light of the alleged continual nature of the conduct here, the Court believes that reasonable minds could differ as to whether Plaintiff endured a hostile work environment.

Further, the Court takes notice of Plaintiff's testimony concerning her feelings of humiliation, "knowing what her co-workers were saying about her and the months-long physical manifestations of anxiety[.]" ECF No. 28, PageID.439. Specifically, Plaintiff testified that she felt like she had the flu "every day" for "four months after everything happened" with Mr. Southworth. ECF No. 28-2, PageID.487. She explained that she experienced digestive troubles and an inability to have intimate relations with her husband. *Id.* The Court finds that such physical manifestations of Plaintiff's alleged anxiety are sufficient to establish a genuine

issue of material fact that Mr. Southworth's comments created a subjectively and hostile work environment. *See Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 733 (6th Cir. 2006) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) ("[T]he conduct must be so severe and pervasive as to constitute a hostile or abusive working environment … to … the alleged victim.").

In considering the totality of the circumstances, and the effects of the purported rumors spread by Mr. Southworth, this Court finds that a genuine dispute of material fact exists as to whether the alleged conduct created a hostile work environment for Plaintiff.  Accordingly, Plaintiff has satisfied the fourth element.

## 2. Defendant's Liability

The fifth element of a hostile work environment claim relates to employer liability.  Where the alleged harasser is a co-worker, as is the case here, a plaintiff must show that her employer response to her complaints "manifested indifference on unreasonableness in light of the facts the employer knew or should have known." *Smith v. Rock-Tenn Services, Inc.*, 813 F.3d 298, 311 (6th Cir. 2016) (internal quotation marks, alterations, and citation omitted).  A plaintiff must therefore establish that her employer "knew or should have known of the harassment" and "failed to take prompt and appropriate corrective action." *Id.* (citation omitted).  In the Sixth Circuit, an employer's response is generally considered "adequate" if it is

"reasonably calculated to end the harassment." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013).

Here, Defendant argues that Plaintiff cannot establish the requisite "indifference or unreasonableness" on its part when it took remedial action. ECF No. 27, PageID.260. According to Defendant, Mr. Weber interviewed ten witnesses, five of whom were identified as witnesses by Plaintiff, during his investigation. *Id.* at PageID.261. Moreover, Defendant explains that it prohibited Mr. Southworth from making further comments, suspended Mr. Southworth for thirty days, and altered his job duties so that he would not contact Plaintiff. *Id.* Defendant thus maintains that its action was prompt and appropriate.

Conversely, Plaintiff argues that Defendant's action was neither prompt nor adequate. ECF No. 28, PageID.440. Plaintiff emphasizes that Defendant "took no action to remove Mr. Southworth until March 17, requiring [her] to continue working with him." *Id.* Plaintiff maintains that Defendant's ten days of inaction of not separating Mr. Southworth from her create a genuine issue of material fact. *Id.*

The Court agrees with Plaintiff. In *Mullins v. Goodyear Tire & Rubber Co.*, the Sixth Circuit explained that "[a]bsent evidence of continued sexual harassment, we are unwilling to impose liability on [defendant] for failing to keep" an alleged harasser from a complainant. 291 Fed. Appx. 744, 749 (6th Cir. 2008). Here, Plaintiff alleges that Mr. Southworth, despite being instructed to stay away from her

during the investigation, tried to approach her multiple times.   ECF No. 28, PageID.430.  In a statement provided to Human Resources, Plaintiff claims that she was forced to grab her co-worker Mr. Johnny Ballard's arm and use him as a shield when she saw Mr. Southworth approach her on March 8, 2017.  ECF No. 28-9, PageID.544.  The following day, Plaintiff avers that she informed Mr. Solano that she was having a difficult time working because Mr. Southworth was on the operation next to her.  *Id.*  Moreover, Plaintiff alleges that she could not work on March 13 or 14, 2017 because she was experiencing stress.  *Id.* at 545.  Finally, Plaintiff purports that on March 16, 2017, Mr. Southworth was "talking about [her] with Jim Sikora."  *Id.*  These allegations create a dispute of fact as to whether "continued sexual harassment" existed for the ten days prior to Mr. Southworth's separation from Plaintiff.  *Mullins*, 291 Fed. Appx. at 749.  The Court thus questions the promptness and adequacy of Defendant's remedial action, despite Mr. Weber's investigation and instructions for the parties to stay away from one another.

Accordingly, the Court will deny summary judgment on Counts II and V of Plaintiff's Complaint.

### B. Sex Discrimination Claims (Counts I and IV)

Plaintiff also brings sex discrimination claims under both Title VII and the ELCRA (Counts I and IV, respectively).  Plaintiff alleges that Defendant unlawfully discriminated against her and subjected her to adverse employment actions,

including suspension and involuntary transfer to a less desirable position, due to her sex. ECF No. 1, PageID.8. In its present Motion, Defendant asserts that Plaintiff's allegations are insufficient to establish a prima facie case of sex discrimination. ECF No. 27, PageID.262.

### 1. Prima Facie Case

Title VII provides that it is unlawful for an employer to discriminate against an individual because of that individual's sex. 42 U.S.C. § 2000e-2(a)(1). Under § 202 of the ELCRA, "[a]n employer shall not ... [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment compensation, or a term, condition or privilege of employment," because of, among other protected classes, sex. Mich. Comp. Laws § 37.2202(1)(a). To succeed under the *McDonnel Douglas* framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019) (citation omitted). The Sixth Circuit has held that a plaintiff's burden of establishing her prima facie case "is not an onerous one." *Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir. 2015). In order to establish a prima facie case of sex discrimination, a plaintiff must demonstrate that: (1) she is a member of a protected group, (2) she was subjected to an adverse employment action, (3) she was qualified for the position at issue, and (4) she was treated differently than a similarly situated individual outside of her

protected class.  *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006) (citation omitted).  Here, Defendant only challenges the second and fourth elements.

Once a plaintiff establishes her prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the adverse employment action."  *Redlin*, 921 F.3d at 607 (internal quotation marks and citation omitted).  If the defendant is able to meet this burden, the plaintiff must then prove by a preponderance of evidence that the defendant's reason was a pretext for the alleged discrimination.  *Id.*  This framework under Title VII also applies to sex discrimination claims brought under the ELCRA.  *Id.*

### a. Whether Plaintiff Was Subjected to an Adverse Employment Action

Here, Plaintiff argues that her DLO and transfer qualify as adverse employment actions for purposes of the second element of her sex discrimination claims.  ECF No. 28, PageID.441.  Defendant only contests Plaintiff's transfer as an adverse employment action.  ECF No. 27, PageID.263.  An adverse employment action is "a materially adverse change in the terms and conditions of [a plaintiff's] employment."  *Redlin*, 921 F.3d at 607 (citation omitted).  Such an action must "constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id.* (citation omitted).

As an initial matter, the Court finds that Plaintiff's DLO for allegedly violating Policy 3-6 constitutes an adverse employment action. Indeed, the Sixth Circuit has upheld a district court's finding that a forty-hour suspension for an individual allegedly "making false allegations against another employee" was an adverse employment action under Title VII. *See Arnold v. City of Columbus*, 515 F. App'x 524, 532 (6th Cir. 2013). Here, the Court takes notice that this suspension was Plaintiff's first "violation," as Human Resources had never received a complaint about her behavior. ECF No. 28-3, PageID.494. Defendant's "Discharge and Discipline" policy explains that such a suspension generally follows from a fifth disciplinary violation. ECF No. 28-15, PageID.561.

The parties dispute whether Plaintiff's transfer can also establish an adverse employment action. The Sixth Circuit has determined that a transfer can be considered an adverse action if it is accompanied by "a change in salary, benefits, title, or work hours, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Arnold*, 515 F. App'x at 532 (internal quotation marks and citation omitted). Stated differently, a plaintiff must establish a "materially adverse change in the terms and conditions of [her] employment." *Strouss v. Mich. Dep't of Corr.*, 75 F. Supp. 2d 711, 725 (E.D. Mich. 1999). "[A] materially adverse change in the terms and conditions of employment

must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citing *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999).

Defendant emphasizes that Plaintiff received the same rate of pay and "performed similar production line machining work" after her initial transfer. ECF No. 27, PageID.264. According to Defendant, Plaintiff was offered an assignment on the Ferrari Line on April 4, 2017. *Id.* Mr. Novacco testified that this Line was a "very high over-time area." ECF No. 27-5, PageID.345. Importantly, the Court takes notice that the parties dispute whether Plaintiff was first transferred to the Ferrari Line. While Defendant maintains this is true, Plaintiff asserts in her Response that Mr. Weber instructed her the night before her return to the plant to report to Department 9190.[4] ECF No. 28, PageID.432. According to Plaintiff, this is a "hi-lo department." ECF No. 27-2, PageID.311. Plaintiff maintains that she was unable to work in this position due to prior neck and back injuries. *Id.*

Should the Court assume that Plaintiff was first transferred to the Ferrari Line, the Court must recognize that Plaintiff testified to experiencing working conditions resembling a "nightmare" with another employee in this assignment. ECF No. 27-2, PageID.310. Plaintiff explained that she was told to "take or leave" the assignment and that she informed Defendant she would be forced to file a grievance.

---

[4] Defendant refers to this department as "Material Handling." ECF No. 27, PageID.250.

-25-

*Id.* Conversely, should the Court assume that Plaintiff was first transferred to Department 9190, the Court must acknowledge that Plaintiff testified that she could not perform her assigned tasks due to prior injuries. *Id.* at PageID.311. In either scenario, an issue of material fact remains as to whether the terms and conditions of her employment were now "disruptive." *Strouss*, 75 F. Supp. 2d at 725. Moreover, the Court takes notice of Defendant's concession that Plaintiff's position in Department 924,[5] which she was reassigned to immediately after her assignment to Department 9190, "may offer fewer overtime opportunities or a greater chance of layoff."[6] ECF No. 27, PaeID.264. Plaintiff alleges that this move would have placed her on a different schedule form her husband. ECF No. 28, PageID.433. She also explains that Defendant typically attempts to accommodate scheduling requests from family members to remain on the same, or work on, opposite crews. *Id.*; *see also* ECF No. 28-7, PageID.531. The Court concludes that the circumstances surrounding Plaintiff's several transfers upon returning to work sufficiently indicate that an adverse employment action was taken. Indeed, the Court finds that

---

[5] Defendant refers to this department as "Cylinder Head Machining." ECF No. 27, PageID.264.

[6] Defendant argues that Plaintiff's two days in the Cylinder Head department cannot constitute an adverse employment action. ECF No. 27, PageID.265. Defendant relies principally on the Sixth Circuit's recent decision, *Ukpai v. Continental Auto. Sys. US, Inc.*, No. 19-1463, 2020 WL 2070278 (6th Cir. Feb. 18, 2020), to support this argument. This Court emphasizes, however, that issues of material fact remain as to the other reassignments Plaintiff received upon returning to work. *See supra.*

reasonable minds could differ as to whether Plaintiff's new working conditions in several departments gave "rise to some level of objective intolerability." *See Deleon v. Kalamazoo Cnty. Road Comm'n*, 739 F.3d 914, 919 (6th Cir. 2014).

Accordingly, in viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has established the second element of her sex discrimination claims.

### b. Whether Plaintiff Was Treated Differently Than Comparators Outside of Her Protected Class

For the fourth element, Plaintiff must show that she was "treated differently than a similarly situated individual outside of her protected class." *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006) (citation omitted).   In evaluating this element, courts look to whether the cited comparators' actions "were of 'comparable seriousness' to the conduct for which Plaintiff was discharged." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citation omitted).

Here, Defendant argues that Mr. Southworth, who presents the closest comparator outside Plaintiff's protected classification, was given an identical thirty-day DLO as Plaintiff following Mr. Weber's investigation.   ECF No. 26, PageID.262–63.   Moreover, Defendant asserts that Plaintiff is unable to identify any individuals in the plant who engaged in similar conduct and were treated better than her.   *Id.*   In short, Defendant argues that Plaintiff cannot present any evidence to establish disparate gender-based treatment.   ECF No. 30, PageID.593.

Conversely, Plaintiff contends that she can establish that Defendant treated her male co-workers more favorably than her. ECF No. 28, PageID.442. She argues that Mr. Southworth was treated differently following Mr. Weber's investigation. *Id.* Plaintiff asserts that while she and Mr. Southworth were ostensibly subjected to the same punishment for allegedly violating Policy 3-6, Defendant contacted Mr. Southworth about returning to the plant days before she was offered the same opportunity. *Id.* She claims that Mr. Southworth received an offer to return to work on or before April 4, 2017 and that he returned to work at their old station on April 5, 2017. *Id.* at PageID.432. Plaintiff further avers that Defendant waited "several days" to contact her with the same offer to return to work and waive her grievance. *Id.* Additionally, Plaintiff argues that Defendant treated Plaintiff "less favorably than other men who use crude language[.]" *Id.* at PageID.442. According to Plaintiff, it is "common knowledge that male employees on the shop floor frequently exchange crudities" similar to the one at issue in the present matter. *Id.*

In its Reply, Defendant emphasizes that it gave Plaintiff "the same offer," which was conveyed through the local union, and that Plaintiff chose to decline it. ECF No. 30, PageID.594. The Court finds, however, that a dispute of material fact exists as to whether Defendant gave Mr. Southworth preferred treatment to return to the plant "several days" before providing Plaintiff the same offer. Moreover, the Court takes notice that Mr. Southworth returned to work in Department 922, while

Plaintiff was transferred to several other departments.  ECF No. 28-19, PageID.575. She claims that Mr. Solano informed her on April 13, 2017 that she would return to her department; however, the following day, Mr. Weber texted Plaintiff, instructing her to report to Department 9190.  *Id.*; ECF No. 28, PageID.432.  The Court finds that Defendant's decision to reinstate Mr. Southworth to his previous department and to transfer Plaintiff to a different department constitutes a dispute of material fact as to whether Plaintiff was treated differently than a similarly situated co-worker outside of her protected class.  Moreover, the Court finds it relevant that Plaintiff has presented evidence of other male co-workers who use crude language on the shop floor, yet, these employees have not been disciplined like Plaintiff was in the present matter.  *See, e.g.*, ECF No. 28-7, PageID.513; ECF No. 28-3, PageID.498. Indeed, Mr. Weber testified that Plaintiff's complaint was the only investigation concerning sexual harassment.  ECF No. 28-7, PageID.513.

Accordingly, the Court concludes that Plaintiff has sufficiently demonstrated the fourth requisite element of her sex discrimination claims.  Plaintiff has thus met her "not onerous" and "easily met" preliminary burden of establishing a prima facie case.  *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011).

### 2.  Burden of Production and Showing of Pretext

To reiterate, once "the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason

for the adverse employment action." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 778 (6th Cir. 2016). The defendant does not need to "persuade the court that it was actually motivated by the proffered reasons"; instead, the defendant must raise "a genuine issue of fact as to whether it discriminated against that plaintiff." *Id.* (internal quotation marks and citation omitted). Once the defendant identifies such a reason, the plaintiff bears the burden of proving that the proffered reason for the adverse action was merely pretextual. A plaintiff can demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Provenzano v. LCI Holdings*, 663 F.3d 906, 815 (6th Cir. 2011).

Here, Defendant argues that it issued the DLO and transferred Plaintiff on the basis of her violation of Policy 3-6. ECF. No. 27, PageID.266–67. The Sixth Circuit has recognized a violation of a company policy as a legitimate, nondiscriminatory reason for taking an adverse employment action. *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 666 (6th Cir. 2000). Defendant explains that Mr. Weber's investigation revealed five witnesses who reported that they heard Plaintiff make comments related to "her skills at giving oral sex." ECF No. 27, PageID.267. These comments, according to Defendant, are "in clear violation of Policy 3-6's prohibition against 'statements about sexual conduct.'" *Id.* (citing ECF No. 27-3). The Court

thus finds that Defendant has sufficiently produced evidence of a legitimate, nondiscriminatory reason for taking an adverse employment action.

Given that Defendant has rebutted the presumption of discrimination, the burden shifts back to Plaintiff to demonstrate that Defendant's proffered reason "was not the true reason for the employment decision." *Cline*, 206 F.3d at 667 (citation omitted). Plaintiff contests Defendant's reasoning, arguing that Mr. Weber "made no attempts to follow [Defendant's] established procedure for investigating [her] complaint." ECF No. 28, PageID.443. She thus appears to argue the second type of showing: that Defendant's proffered reasons did not actually motivate the adverse employment action. *Provenzano*, 663 F.3d at 815. In this showing, a plaintiff

> admits that such conduct *could* motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

*DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 392 (6th Cir. 2005) (citation omitted).

Here, Plaintiff emphasizes that Mr. Weber made no attempt to include a woman or union representative on his investigation team. ECF No. 28, PageID.443. She also explains that Mr. Weber failed to obtain signed statements from the parties and he improperly shredded his investigation notes. *Id.* Upon review of Defendant's

"Discrimination and Harassment Prevention" policy, it is clear that Mr. Weber was required to "attempt to structure [his investigation] team" with at least one male and one female, in addition to two representatives from the Union.  ECF No. 28-6, PageID.508.  While Mr. Weber testified that one female employee, Ms. Maggie Holbein, could not be present, he was unable to identify a reason why he did not attempt to include any other female employees on his team.  ECF No. 27-6, PageID.352–53.  Moreover, the Court recognizes the parties' dispute as to whether it was proper for Mr. Weber to discard his interview notes.  ECF No. 28, PageID.443; ECF No. 30, PageID.596.  Indeed, Mr. Weber testified only to his own practice and reasons for disposing his notes.  ECF No. 27-6, PageID.354.  The Court finds that a dispute of material fact exists among the parties as to Mr. Weber's adequacy in following Defendant's established procedures.

Additionally, the Court takes notice of Plaintiff's argument that Mr. Weber purportedly bypassed Defendant's progressive discipline policy.  Defendant's "Discharge and Discipline" policy explains that a DLO, which is what Plaintiff received at the conclusion of Mr. Weber's investigation, is generally issued to an employee committing her fifth violation.  ECF No. 28-15.  Mr. Novacco testified that Human Resources never received a complaint about her behavior prior to this incident.  ECF No. 28-3, PageID.494.  While the "Discharge and Discipline" policy explains that "[c]ircumstances will arise which necessitate corrective disciplinary

action that may not follow the standard progression guideline," the Court recognizes that a question of material fact exists as to whether such circumstances were present here. Indeed, Mr. Weber was unable to name an employee who was offended by Plaintiff's alleged comments. He explained that he interpreted the policy to mean whether a "reasonable person would find behavior offensive." ECF No. 30-3, PageID.626. Plaintiff contests this interpretation, stating that Policy 3-6 does not use such language. ECF No. 28, PageID.444. Moreover, Plaintiff emphasizes that the witnesses who definitively stated that they heard Plaintiff make the comments at issue said such comments occurred "over a year ago." *Id.* at PageID.445. According to Mr. Novacco, it would be unusual to discipline an employee for conduct that occurred on this timeline. ECF No. 28-3, PageID.495.

Lastly, the Court finds Defendant's argument, that Plaintiff cannot defeat the "honest belief" rule, ECF No. 27, PageID.268, is unavailing. The "honest belief" rule provides that an "employer is entitled to 'summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless.'" *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590–91 (citation omitted). In determining whether to apply this rule, courts must ask "'whether the employer made a reasonably informed and considered decision before taking an adverse employment action.'" *Id.* at 591 (citation omitted). As explained above, Plaintiff has presented evidence to contest whether Mr. Weber's investigation was

"reasonably informed and considered" before taking an adverse employment action. While it is true that "[a]n employer's pre-termination investigation need not be perfect in order to pass muster under the rule," the Court concludes that issues of material fact remain as to whether Defendant's proffered reason for suspending and transferring Plaintiff was pretextual. Importantly, the Court denotes that "[a]t the summary judgment stage, the issue is whether the plaintiff has produced evidence form which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 612 (6th Cir. 2019).

By construing the facts in a light most favorable to Plaintiff, the Court finds that the parties' dispute of Mr. Weber's investigation and subsequent disciplinary decision sufficiently demonstrate pretext so that summary judgment in Defendant's favor is precluded. Importantly, the Court recognizes that another district court in this Circuit has similarly determined evidence concerning a defendant's decision to not follow its progressive disciple program and investigative procedures can establish pretext. *See Cole v. Tenn. Watercraft, Inc.*, No. 3:06-cv-381, 2008 WL 2783520, at *12 (E.D. Tenn. July 15, 2008).

Accordingly, the Court will deny summary judgment on Counts I and IV of Plaintiff's Complaint.

## C. Retaliation Claims (Counts III and VI)

Lastly, Plaintiff brings retaliation claims under both Title VII and the ELCRA (Counts III and VI, respectively). Plaintiff alleges that Defendant acted unlawfully when it retaliated against her following her complaint about her hostile and discriminatory work environment. ECF No. 1, PageID.11, 15.

The analysis for retaliation claims under Title VII and the ELCRA is the same. *See Humenny v. Genex Corp.,* 390 F.3d 901, 906 (6th Cir. 2004). In order to establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in protected activity, (2) the Defendant knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there is a causal connection between the protected activity and the adverse employment action. *Niswander v. Cincinnati Ins. Co.,* 529 F.3d 714, 720 (6th Cir. 2008). A causal connection may be proven by either direct evidence or through temporal proximity that creates an inference of causation. *See Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 735 (6th Cir. 2006) (citation omitted).

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 814 (6th Cir. 2011). The defendant meets its burden by "clearly set [ting] forth, through introduction of admissible evidence," its reasons for the adverse employment action.

*Id.* at 815.  If a defendant can articulate such a legitimate reason, then the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's reason was a pretext for the alleged discrimination.  *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 675 (6th Cir. 2013).

Here, Defendant argues that Plaintiff cannot establish an adverse employment action that is causally connected to her complaint.  ECF No. 27, PageID.262.  Defendant directs the Court to Mr. Weber's deposition, where he explained that both Plaintiff and Mr. Southworth were suspended for talking to witnesses before he could interview them during his investigation.  ECF No. 30, PageID.596 (citing ECF No. 30-3, PageID.623).  Defendant also points to Mr. Weber's report, where he denoted that Plaintiff and Mr. Southworth "had to be removed from the facility in order to conduct a proper investigation."  ECF No. 30, PageID.596.  Additionally, Defendant asserts that Plaintiff cannot prove that the DLO or transfer assignments constituted pretext.  ECF No. 27, PageID.267.

The Court finds that Plaintiff has met her burden demonstrating the existence of factual issues to survive summary judgment.  Plaintiff engaged in protected activity by reporting Mr. Southworth's alleged conduct to her union, which then notified Defendant.  Under Title VII, there are two types of protected activity: participation in a proceeding with the Equal Employment Opportunity Commission ("EEOC") and opposition to an apparent Title VII violation.  *Wasek v. Arrow Energy*

*Services, Inc.*, 682 F.3d 463, 469 (6th Cir. 2012).  Plaintiff did not file a complaint with the EEOC, but the Sixth Circuit has recognized that a complaint about allegedly unlawful and discriminatory conduct to an organization's management can constitute "opposition activity." *Id.* (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000) ("The [EEOC] has identified a number of examples of 'opposing' conduct which is protected by Title VII, including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices ...").  It is undisputed that Defendant was aware of Plaintiff's complaint.

As detailed in the previous section, the circumstances surrounding Plaintiff's several transfers, as well as Plaintiff's DLO, are sufficient to establish that Defendant took adverse employment action against Plaintiff.  Retaliatory acts by an employer are not actionable unless they are "materially adverse" to a plaintiff's employment. *Wasek*, 682 F.3d at 470.  While Defendant maintains that Plaintiff was initially suspended for talking to witnesses during Mr. Weber's investigation, Plaintiff avers that Defendant improperly responded to her complaint by "suspending her for the exact conduct she herself had reported and transferring her out of her department while allowing Mr. Southworth to stay." ECF No. 28, PageID.447.  These questions of fact, when viewed in the light most favorable to Plaintiff, prevent the Court from finding in favor of Defendant at this juncture.

Moreover, the Court concludes that there are questions of fact as to the causal connection between Plaintiff's complaint and Defendant's adverse employment action. After Plaintiff reported Mr. Southworth's alleged conduct, she was suspended for purportedly committing the same conduct. Specifically, Plaintiff was suspended on March 17, 2017, which is less than two weeks after Defendant first learned of her complaint against Mr. Southworth. ECF No. 28, PageID.447. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Montell v. Diversified Clinical Services, Inc.*, 757 F.3d 497, 505 (6th Cir. 2014). Because the adverse employment action occurred very close in time to Defendant's knowledge of Plaintiff's complaint— approximately two weeks—the Court finds that Plaintiff has presented enough evidence to demonstrate a causal connection. Moreover, the Court once more emphasizes that no one in the plant complained about Plaintiff's behavior prior to her complaint about Mr. Southworth. In sum, the Court finds that Plaintiff satisfies the fourth requisite element of a prima facie case of retaliation.

Finally, the Court reiterates its conclusion, explained *supra*, that issues of material fact remain as to whether Defendant's proffered reason for suspending and transferring Plaintiff was pretextual. By construing the facts in a light most

favorable to Plaintiff, the Court finds that the parties' dispute of Mr. Weber's investigation and subsequent disciplinary decision sufficiently demonstrate pretext so that summary judgment in Defendant's favor on Counts III and VI is precluded.

Based on the foregoing considerations, questions of fact exist for trial on Plaintiff's hostile work environment sexual harassment, sex discrimination, and retaliation claims under Title VII and the ELCRA. Accordingly, Defendant is not entitled to judgment in its favor on these claims.

## V. CONCLUSION

For the reasons articulated above, Defendant's Motion for Summary Judgment [#27] is **DENIED**.

**IT IS SO ORDERED.**

Dated:        October 28, 2020

> s/Gershwin A. Drain
> HON. GERSHWIN A. DRAIN
> United States District Court Judge

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 28, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager